**James ROYSTER, Percy Rutherford and all other persons similarly situated, Plaintiffs,**

v.

**Paul D. McGINNIS, Commissioner of Correction, State of New York, Harry Fritz, Warden, Auburn Prison, Auburn, New York, J. L. Casscles, Warden, Ossining Correctional Facility, Ossining, New York, Defendants.**

**No. 70 Civ. 4365.**

United States District Court, S. D. New York.

Jan. 21, 1971.

James J. McDonough, Legal Aid Society of Nassau County, N. Y., Mineola, N. Y., for plaintiffs; Joel Ziegler, Mathew Muraskin, Mineola, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Samuel A. Hirshowitz, Michael Colodner, New York City, of counsel.

LASKER, District Judge.

Plaintiffs James Royster and Percy Rutherford, New York State prisoners in the Auburn and Ossining Correction Facilities, respectively, bring this class action on behalf of themselves and others similarly situated seeking a declaratory judgment that Section 230(3) of the New York Correction Law, McKinney's Consol.Laws, c. 43, under which their "good time" was computed, is unconstitutional, and for an injunction against the alleged discriminatory practices pursued by defendants in application of that statute.

This suit is brought under 42 U.S.C. § 1983 (the "Civil Rights Act") invoking the jurisdiction of this court pursuant to 28 U.S.C. § 1343(3). Plaintiffs now move for the convocation of a three-judge district court under 28 U.S.C. §§ 2281, 2284, to consider the allegations of

unconstitutionality and enjoin enforcement of the state statute in question.

Plaintiff Royster was indicted by a Nassau County Court grand jury on June 15, 1965. Upon failing to post a $3,000 bail bond (later increased to $7,500 to cover a second indictment), he was remanded to the Nassau County jail. He was thereafter convicted of burglary in the third degree and grand larceny in the first degree, after a trial by jury, in the Supreme Court, Nassau County. On May 20, 1966, he was sentenced to consecutive sentences of five to ten years on each count, and on May 26, 1966 he was received in state prison. Prior to the latter date, he had spent one year, one month and nine days, or 404 days ("jail time"), in the Nassau County Jail, beginning with the date of his arrest on April 17, 1965.

Plaintiff Rutherford was indicted on January 25, 1966 by the Nassau County Court grand jury and held in $5,000 bail, which he was not able to post. He was convicted, after a jury trial, in the Supreme Court, Nassau County, and sentenced on November 1, 1966, to concurrent terms of ten to twenty years for robbery in the first degree and two and one-half to five years for grand larceny in the second degree, and a suspended sentence on each of two assault, second degree convictions. By the time he was received in state prison on November 4, 1966, plaintiff Rutherford had spent eight months and two days, or 242 days ("jail time"), in the Nassau County Jail awaiting trial and sentencing.

Although both plaintiffs were entitled to, and did, receive *jail time* credit against the terms of sentence imposed upon them for the period of their incarceration in county jail (Penal Law, McKinney's Consol.Laws, c. 40, § 2193(1)), they did not receive, and under the provisions of Section 230(3) of the Correction Law were not entitled to receive, *good behavior time credit* ("good time

credit") for this period of detention served in county jail prior to transfer to state prison.

Plaintiffs contend that if they had received good time credit for the time spent in county jail between arrest and sentence, they would be entitled to appear before the Parole Board several months (in Royster's case, over four months; in Rutherford's, nearly three months) earlier than they will be under the state's present computation pursuant to the language of Section 230(3). Plaintiffs therefore bring this action to compel defendants to recompute their "minimum release dates" (that is, the dates upon which they would first have the right to appear before the Parole Board), contending that they should receive good time credit for the time served in jail prior to their reception at their respective state prisons. Plaintiffs urge that the withholding from them of good time credit for the period of their incarceration in county jail deprives them of equal protection of the laws in violation of the Fourteenth Amendment in that such a method of computing good time discriminates against those prisoners who cannot afford or, in some cases, are not even granted, bail while awaiting trial and sentencing.

That Section 230 of the Correction Law sanctions and, indeed, requires the denial of good time credit for the time plaintiffs served in jail seems clear from the face of the statute. Subsection 2 thereof provides that a state prisoner may receive, "for good conduct and efficient and willing performance of duties assigned, a reduction of his sentence not to exceed ten days for each month of the minimum term in the case of an indeterminate sentence * * *,"[1] and subsection 3 states that "in the case of an indeterminate sentence prisoner said reduction shall be computed upon the minimum term of such sentence, *less jail time allowance.*" (Emphasis added.) It is on the basis of the statutory formu-

[1]. We are here dealing with an "indeterminate sentence," that is, a "sentence to imprisonment in a state prison having minimum and maximum limits fixed by the court." Correction Law § 230(1).

la set forth in these two subsections that an indeterminate sentence prisoner's minimum release (or parole) date is calculated, and it is this method of computation that, plaintiffs claim, deprives them of equal protection of the laws. It should be noted, however, that jail time is *not* excluded from the computation of a prisoner's maximum good time allowance for purposes of determining his "statutory release date" pursuant to subsection 4 of Section 230. This date, which is arrived at by deducting a prisoner's good time allowance from the *maximum* term (not the minimum term, as in the case of the minimum release date) of an indeterminate sentence, is the earliest date on which an inmate *must* be paroled by the Parole Board (unlike the minimum release date, which is the earliest date on which an inmate *can* be paroled at the discretion of the Parole Board). And the New York courts have construed Section 230(4) (which, unlike Section 230(3), does not contain the same explicit language denying credit for jail time) to require that good time credits earned thereunder be allowed not only for time served in state prison but also for pre-sentence jail time.[2] Similarly, Section 230(3) itself provides that in the case of prisoners

2. Under § 230(4) the statutory release date is set at the rate of five days off per month (as opposed to 10 days in the case of the minimum release date), or one-sixth of the maximum expiration date (that is, the maximum date of a sentence to which an inmate can be held if he receives no good time credit whatsoever, either for time served in jail or prison). It should be noted that the statutory scheme of § 230, which is the subject of this lawsuit, is no longer the law in New York. On September 1, 1967, § 230 was replaced by §§ 803 and 805 of the Correction Law and §§ 70.30 and 70.40 of the new Penal Law, which sections apply to all convictions for offenses committed *on or after that date* (but not to convictions—as of plaintiffs herein—for offenses committed *prior to* the effective date). Significantly, under the new statutory scheme, good time earned on the minimum sentence is abolished altogether, thus removing any question of unequal treatment. An inmate meets with the Parole Board at the expiration of his minimum term regardless of how much good time credit he has earned against his maximum sentence or of how much time he spent in county jail prior to his receipt in state prison. Correction Law § 805(3); Penal Law § 70.40(1) (a). Thus, good time is now credited solely against the maximum term of an indeterminate sentence, and it is awarded without regard to whether a prisoner has served time in county jail prior to sentencing. Correction Law §§ 803(1), 805 (1); Penal Law §§ 70.30(4), 70.40(1) (b). This calculation is identical to that made formerly pursuant to § 230(4), except that a prisoner may now earn 10 rather than 5 days good time credit per month against his maximum sentence.

This computation results in the Department of Correction setting, upon a prisoner's arrival at state prison, a "conditional release date" of one-third off the maximum sentence. As in the case of the statutory release date under § 230(4), a prisoner must automatically be released (if he has not in the interim incurred any penalties which have reduced his good time allowance) upon reaching his conditional release date. In addition, any person covered by § 230(4) of the old Correction Law by reason of having committed the offense for which he was convicted prior to September 1, 1967 is entitled, at any time, to elect to serve his sentence under the provisions of the new Penal Law and the new chapters of the Correction Law, and so be eligible for "conditional release." Correction Law § 230–a. Neither of the named plaintiffs has as yet made this election, presumably because it would foreclose them from receiving any good time credit whatsoever (either for prison time alone, or, as they now request, for both prison and jail time together) off of their minimum sentences and thus compel them to await the full expiration of their minimum terms before appearing before the Parole Board. Thus, the scope of this case (and of any proposed class) is necessarily limited, for the challenged statute, § 230(3) of the Correction Law, now applies only to those prisoners who were convicted for offenses committed before September 1, 1967, whose minimum terms have not yet expired, who have not yet met the Parole Board, and who have not as yet elected the conditional release program under § 230–a. Nevertheless, the very existence of the issue in this case attests to the continuing presence and effect of § 230(3).

confined in county penitentiaries,[3] as opposed to those confined in state prisons, good time reductions "shall be computed upon the term of the sentence as imposed by the court, including *jail time allowance.*" (Emphasis added.)

■ The issue here raised is identical to the question presented to this court recently in the case of Phipps v. McGinnis, 69 Civ. 3236, 327 F.Supp. 1 (S.D.N.Y.). In two decisions (dated March 20, 1970 and Aril 13, 1970, respectively), I found that plaintiff had stated a cognizable claim under the Civil Rights Act and that this court had jurisdiction thereof, that the complaint (which was substantially similar to the one here in issue) stated a claim upon which relief could be granted, and, finally, that a substantial constitutional question had been raised requiring the convening of a three-judge district court.[4] I still adhere to these views, and, in the interest of brevity, reference is made without further comment to the earlier opinions.

Inasmuch as the state has adduced substantially more authority in support of its position in these cases than it did at the time of the *Phipps* case, however, a comment is in order on the several bases now suggested by defendants for upholding the rationality of the distinction made by Section 230(3) between jail and non-jail defendants with regard to the awarding of good time credit.

■ Defendants contend that since county jails and state prisons differ in both their intended goals and available facilities, the deduction of jail time in determining good time is eminently reasonable and logical. Whereas, defendants claim, state correctional facilities are designed to serve a three-fold purpose of imposing punishment, protecting society and, most importantly, rehabilitating the inmate, county jails exist primarily as detention facilities to restrict prisoners awaiting trial. Similarly, defendants argue, whereas the facilities in state prisons are equipped to provide long-term educational and vocational programs with good time granted as an incentive to the inmates to participate in these programs, county jails are not equipped to provide such services and consequently there is no opportunity to evaluate an inmate's performance, nor need to encourage his participation, in such programs. Nevertheless, defendants acknowledge that the overriding consideration in the granting of good time reductions is the maintenance of prison discipline. (Defendants' Memorandum of Law, dated November 9, 1970, at p. 15). Indeed, a New York state court which upheld the constitutionality of Section 230(3) has stated:

"The policy underlying the discretionary grant of good time reductions is clear. The attitude and conduct of prisoners should improve if they are offered an incentive for good and productive behavior while at the same time the fact that reductions can be withheld will inhibit bad conduct." Perez v. Follette, 58 Misc.2d 319, 321, 295 N.Y.S.2d 231, 233 (Sup.Ct., Dutchess County, 1968); aff'd People ex rel. Perez v. Follette, 31 A.D.2d 600, 295 N.Y.S.2d 608; motion for leave to appeal dismissed as moot, 23 N.Y. 2d 737, 296 N.Y.S.2d 569, 244 N.E.2d 83 (1968).

If the legislative purpose of this statute was, as it clearly seems to have been, to encourage good conduct on the part of prisoners, the particular time or place of their incarceration would not appear to be a relevant consideration. Rather, "it would seem that awarding good time credit for time served *both* before and after sentencing, whether by jail or

---

3. Such penitentiaries are county correctional institutions maintained, in general, for the confinement of persons convicted of non-felony offenses carrying sentences of one year or less.

4. In *Phipps*, the three-judge court eventually dismissed the case as moot because by that time the plaintiff had already appeared before the Parole Board for consideration for minimum release. Phipps v. McGinnis, 69 Civ. 3236, 327 F. Supp. 1 (S.D.N.Y. May 13, 1970). The court, therefore, did not reach the merits of the case.

prison authorities, would serve the greater goal of inducing good behavior by the prisoners throughout the total period of their confinement." Phipps v. McGinnis, supra, 69 Civ. 3236, 327 F.Supp. 6, at p. —— (S.D.N.Y. March 20, 1970). In addition, even assuming as true the asserted disparity in goals and facilities between the two types of institutions, the state itself apparently experiences little difficulty in granting good time credit for pre-sentence jail time both in the case of the county penitentiary inmate and in the case of the indeterminate sentence prisoner's statutory release date from state prison. In both instances jail time is included in the computation of a prisoner's good time allowance despite the fact that the type of activity required of an inmate to earn good time credit in a county penitentiary or in state prison is allegedly vastly different from that which could be required of an individual incarcerated in county jail. Finally, it should be noted that plaintiffs' requested change in the method of good time computation for purposes of minimum release could probably be implemented without major difficulty simply by having county jail authorities certify at the time of a prisoner's receipt in state prison whether or not he is entitled to good time credit for the time he passed in county jail. In fact, whatever method is now used by state authorities to compute the good time allowance of a county penitentiary prisoner, or, indeed, of an indeterminate sentence prisoner for purposes of his statutory release, could seemingly be employed here as well. It would not appear equitable that plaintiffs and other prisoners like them should be made to bear the yoke of unequal and prolonged confinement merely because of the administrative division of labor between county and state prison authorities.

■ Defendants also argue that, since county jails are supervised by local officials and not, like state prisons, by state correction authorities, and since it is these state officials who must eventually make the sensitive decision whether to release a prisoner prior to the expiration of his minimum sentence or not, the granting of good time (which, in turn, determines a prisoner's minimum parole date) should be made only on the basis of personal observation and evaluation of the prisoner's conduct by state officials while he is actually confined in their custody in state prison. But this difficulty, if real, can be easily overcome. If the Board should feel that there has not been sufficient time for evaluation by state officials of the prisoner's conduct and his potential for early release, it can simply refuse to release him, and, barring an excessive abuse of discretion in this regard, such a sensitive determination would not be subject to judicial review. Thus, the very fact that the Board *can* exercise such broad discretion in determining whether to release a prisoner on parole at the time of his minimum release date would seem to compensate for whatever evaluation time may be lost to the Board during the period of a prisoner's county jail incarceration.

Moreover, it would probably often be the case, as it is with regard to the two named plaintiffs herein, that, even with the allowance of good time credit for jail time, the amount of time available to the Parole Board for observation and evaluation of a particular prisoner while in state prison would be only minimally reduced. From the prisoner's point of view, on the other hand, even such a minimal reduction in his time served would surely be of great consequence to him. In plaintiff Rutherford's case, for example, if he were to receive good time credit for the time he spent in county jail prior to sentence, he would spend five years, 11 months and 28 days in state prison (plus eight months and 2 days in county jail) before becoming eligible to meet the Parole Board, whereas under the state's present computation he will have to spend six years, two months and 19 days in state prison (plus the eight months and two days in county jail) before he can meet the Parole Board. While the additional two and

**1324**

one-half months in state prison would probably add precious little to the sum of the Parole Board's knowledge of plaintiff after nearly six years of observation and evaluation, the possibility of gaining his freedom some 81 days earlier would undoubtedly be a matter of great moment to plaintiff Rutherford and other imprisoned men like him.

■ Finally, defendants contend that plaintiffs are not really challenging the good time provisions of Section 230, but rather are attacking the consequences of the bail system. Defendants argue that, while there is an obvious difference in treatment between those free on bail and those in custody for failure to make bail, such a classification of "jail versus bail" is a constitutionally permissible one expressly provided for by the Eighth Amendment, and the consequences of such a classification cannot be deemed to constitute invidious discrimination. I do not disagree with this proposition; however, I have serious doubts as to whether it meets the issue at hand. Defendants rely heavily on Rigney v. Hendrick, 355 F.2d 710 (3d Cir. 1965), cert. denied 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685, where a defendant who was unable to post bail was, while in jail, placed in a line-up that subsequently led to his identification by a victim of another crime. In rejecting his claim of a denial of equal protection, the Third Circuit stated, 355 F.2d at 715:

> "Here we cannot find an invidious discrimination for the different methods employed by the police in securing the identification of a suspected criminal are made necessary because of the difference in circumstances in which those free on bail and those detained find themselves. Admittedly, there is a classification between those who can and those who cannot make bail. The Constitution, however, permits such a classification, and any differences here, arise solely because of *the inherent characteristics of confinement* and cannot constitute invidious discrimination." (Emphasis added.)

The real question, then, is whether or not the denial of good time credit for jail time is an "inherent characteristic of confinement." While it follows naturally that certain rights, such as "the right of privacy, to earn a livelihood, to vote, to speak freely, to associate with persons of one's choosing," Morris v. Crumlish, 239 F.Supp. 498, 500 (E.D.Pa.1965), must be denied to unbailed defendants as a necessary consequence of their confinement, I do not believe that it follows that denial of good time credit is in any way an "inherent characteristic of confinement." Rather, the grant or denial of good time would seem to be a wholly independent creature of statute. Surely the purpose of the Eighth Amendment—to insure, by bail or, for want of that, by pre-trial incarceration, the defendant's appearance in court—would be equally well served whether or not good time credit were subsequently granted for jail time. Thus, it would appear that "while such distinctions *as are necessitated by confinement* while awaiting trial may be made between those who supply bail and those who cannot," Rigney v. Hendrick, supra, 355 F.2d at 716–717 (dissenting opinion, Freedman, J.) (emphasis added), the unequal denial of good time credit for jail time required by Section 230(3) is not inherently related to such confinement and may well constitute an invidious discrimination.

In any event, as Judge Friendly recently noted, "[t]he issue here is not whether [the state statute] is unconstitutional but whether plaintiffs' claim of unconstitutionality [is] unsubstantial 'either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court [the Supreme Court] as to foreclose the subject.'" Latham v. Tynan, 435 F.2d 1248 (2d Cir., decided December 16, 1970) (dissenting opinion). Plaintiffs' claim herein meets this test of substantiality.

Accordingly, plaintiffs' application for the convening of a three-judge court is granted.

It is so ordered.