**James ROYSTER, Percy Rutherford and all other persons similarly situated, Plaintiffs,**

v.

**Paul D. McGINNIS, Commissioner of Correction, et al., Defendants.**

**No. 70 Civ. 4365.**

United States District Court, S. D. New York.

Aug. 23, 1971.

James J. McDonough, Legal Aid Society of Nassau County, N. Y., Mineola, N. Y., for plaintiffs; Matthew Muraskin, G. Jeffrey Sorge, Mineola, of counsel.

Louis J. Lefkowitz, Atty. Gen., of State of New York, New York City, for defendants; Samuel A. Hirshowitz, Michael Colodner, New York City, of counsel.

Before HAYS, Circuit Judge, and METZNER and LASKER, District Judges.

## OPINION

LASKER, District Judge.

Two New York State prisoners have brought this class action seeking a declaratory judgment that Section 230(3) of the New York Correction Law, McKinney's Consol.Laws, c. 43, under which their "good time" was computed, is unconstitutional and an injunction against the alleged discriminatory practices pursued by defendants in application of that statute.

Plaintiffs attack the constitutionality of the provision in § 230(3) which denies state prisoners good time credit for the period of their pre-sentence incarceration in county jail. They contend that the denial of such good time credit deprives them of equal protection in violation of the Fourteenth Amendment by discriminating against those prisoners who cannot afford or are not granted bail prior to trial and sentencing.

This suit is brought under 42 U.S.C. § 1983 (the Civil Rights Act), with federal jurisdiction predicated on 28 U.S.C. § 1343(3). By opinion and order dated January 21, 1971, this court, having found that a substantial constitutional question had been raised, granted plaintiff's application to convene a three-judge court. Royster v. McGinnis, 327 F.Supp. 1318 (S.D.N.Y.1971).

Plaintiffs James Royster and Percy Rutherford are inmates of the Auburn and Ossining Correction Facilities, respectively. They bring this action on behalf of themselves and other state prisoners similarly situated who have served terms of incarceration in county jail prior to their transfer to state prison but have not received good time credit therefor. Royster, having been unable to post the requisite bail bond at the time of arrest, served one year, one month and nine days, or 404 days ("jail time"), in the Nassau County Jail prior to his transfer to state prison to serve consecutive five to ten year terms for burglary in the third degree and grand larceny in the first degree. Rutherford also failed to make bail and, as a result, spent eight months and two days, or 242 days ("jail time"), in the Nassau County Jail prior to his trial, sentencing, and receipt in state prison to serve concurrent terms of ten to twenty years for robbery in the first degree and two and one-half to five years for grand larceny in the second degree.

Although plaintiffs did receive *jail time* credit against the terms of their sentences for the period of their county jail incarceration,[1] they did not receive, and under the provisions of § 230(3) were not entitled to receive, any *good behavior time* credit ("good time") for this period of detention served prior to transfer to state prison. Contending that they should have received good time credit for the jail time so served, plaintiffs now seek to compel defendants to recompute their "minimum release dates" (that is, the dates upon which they would first have the right to appear before the Parole Board). They point out, and it is not disputed, that were they to receive good time credit for time spent in county jail between arrest and sentence, they would be entitled to appear before the Parole Board several months (over four months, in Royster's case; nearly three months, in Rutherford's) earlier than they will under the computation required by § 230 (3).

There is no doubt that by its express wording Section 230 mandates the denial of good time credit for the time plaintiffs served in county jail awaiting trial and sentencing. Subsection 2 thereof provides that a state prisoner may receive, "for good conduct and efficient

---

1. See Penal Law McKinney's Consol. Laws, c. 40, § 2193(1), repealed as of September 1, 1967, but in effect at the time plaintiffs were committed to state prison. Section 2193(1) has been replaced in the new Penal Law by § 70.30 (3).

and willing performance of duties assigned, a reduction of his sentence not to exceed ten days for each month of the minimum term in the case of an indeterminate sentence * * *,"[2] and subsection 3 states that "in the case of an indeterminate sentence prisoner said reduction shall be computed upon the minimum term of such sentence, *less jail time allowance*." (Emphasis added.) However, while jail time *is* excluded from the calculation of an indeterminate sentence prisoner's maximum good time allowance for purposes of determining his minimum release (or parole) date under § 230(3), it is *not* excluded from such computation when it comes to setting the same prisoner's "statutory release date" pursuant to subsection 4 of Section 230. The latter date is the earliest date on which an inmate *must* be paroled by the Parole Board and is arrived at by deducting a prisoner's total good time allowance (five days per month) from the *maximum* term of his indeterminate sentence. By contrast, the minimum release date signifies the earliest date on which an inmate *may* be paroled at the discretion of the Parole Board, and it is computed by deducting the prisoner's total good time credit (ten days per month) from the *minimum* term of his indeterminate sentence.

It is significant that the New York courts[3] have construed § 230(4) (which, unlike § 230(3), does not contain the same explicit language denying good time credit for jail time) to require that good time credits earned thereunder be allowed not only for time served in state prison but also for presentence jail time.[4] Similarly, § 230(3) itself provides that in the case of prisoners confined in county penitentiaries,[5] as opposed to those confined in state prisons, good time reductions "shall be computed upon the term of the sentence as imposed by the court, *including jail time allowance*." (Emphasis added.)

## JURISDICTION

█ In the earlier opinion of the single district judge convening this three-judge court, Royster v. McGinnis, supra, the court determined that plaintiffs had

2. We are here concerned with an "indeterminate sentence," that is, a "sentence to imprisonment in a state prison having minimum and maximum limits fixed by the court." Correction Law § 230 (1).

3. See People ex rel. Stark v. Deegan, 56 Misc.2d 567, 289 N.Y.S.2d 285 (Sup.Ct., Westchester County, 1968); Paul v. Warden of the Suffolk County Jail (New York Law Journal, May 21, 1969, at p. 18, col. 6).

4. For a more extensive analysis of the relationship between §§ 230(3) and (4), as well as the pertinent provisions of the new Penal Law and the new chapters of the Correction Law, see footnote 2 in the opinion of the convening court herein, Royster v. McGinnis, supra, 327 F.Supp. 1318. It should be noted, however, that the statutory scheme of § 230, which is the subject of this lawsuit, is no longer the law in New York. On September 1, 1967, § 230 was replaced by §§ 803 and 805 of the Correction Law and §§ 70.30 and 70.40 of the new Penal Law, which sections apply to all convictions for offenses committed *on or after that date* (but not to convictions—

as of plaintiffs herein—for offenses committed *prior to* the effective date). Thus, the scope of this case (and of the proposed class) is necessarily limited, for the challenged statute, § 230(3) of the Correction Law, now applies only to those prisoners who were convicted for offenses committed before September 1, 1967, whose minimum terms have not yet expired, who have not yet met with the Parole Board, and who have not yet elected the "conditional release" program offered by the new law and made available to old law prisoners by § 230–a of the Correction Law. Of these prisoners, a smaller class yet—comprised of those inmates who served time in county jail prior to sentence to state prison—actually feel the effect of § 230(3)'s proscription against good time credit for jail time. Nevertheless, the briefs in this case attest to the continuing effect of that mandate on a substantial number of individuals.

5. Such penitentiaries are county correctional institutions maintained, in general, for the confinement of persons convicted of non-felony offenses carrying sentences of one year or less.

stated a cognizable claim under the Civil Rights Act over which the court had jurisdiction, and that the complaint stated a claim upon which relief could be granted. In that opinion substantial reliance was placed, as it is here in the interest of judicial economy, on a prior decision of this court in the case of Phipps v. Mc-Ginnis, 327 F.Supp. 1 (S.D.N.Y.1970), in which the precise question now before this three-judge court was presented.[6] In *Phipps,* as here, defendants claimed that the court lacked jurisdiction because plaintiff's suit, in effect, sought release from prison and, as such, attempted improperly to avoid the exhaustion requirements of 28 U.S.C. § 2254. At this point it need only be reemphasized that where a plaintiff seeks neither release from custody nor redress of alleged civil rights violations incurred in his state criminal proceedings, relief by way of habeas corpus is inappropriate. In the instant action, plaintiffs make no charge of unconstitutional detention resulting from illegalities in their state court trials. Nor is plaintiffs' complete or immediate liberty at stake, for even if plaintiffs were to secure earlier hearings before the Parole Board, the Board would still retain ultimate discretion to refuse them release on parole.[7]

■■■ What *is* clearly at stake, however, is the possible deprivation to plaintiffs of rights secured to them by the Constitution, namely, their right to equal treatment under the law, guaranteed by the Fourteenth Amendment. The Civil

Rights Act ·creates a cause of action precisely to relieve such a deprivation, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and state prisoners fall clearly within its protection. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). Moreover, unlike the federal habeas corpus statute (28 U.S.C. § 2254), the Civil Rights Act, when properly relied upon for federal jurisdiction, does not require the exhaustion of state judicial remedies. Wright v. McMann, supra, 387 F.2d at 522–523. Thus, this court has jurisdiction of the issues raised by the complaint herein and may determine the merits.

## THE MERIT OF THE COMPLAINT

The burden of plaintiffs' complaint is that Section 230(3) of the Correction Law violates the Fourteenth Amendment because it denies equal protection of the law to those persons who cannot afford to obtain bail (or are not granted bail) between arrest and sentence and so must serve time in jail awaiting judgment. Plaintiffs argue that whereas those fortunate enough to obtain bail prior to sentence are rewarded with a full allowance of good time credit for the entire period which they ultimately spend in custody (in state prison), those defendants (indigents and otherwise) who are jailed between arrest and sentence · because of their inability to furnish bail are

---

6. In *Phipps,* a three-judge court eventually dismissed the case as moot because by that time the plaintiff had already appeared before the Parole Board for consideration for minimum release. Phipps v. McGinnis, 327 F.Supp. 1 (S.D. N.Y., 1970). The court, therefore, did not reach the merits.

7. Plaintiff's loss is nevertheless quite real, for, as stated in United States ex rel. Campbell v. Pate, 401 F.2d 55, 57 (7th Cir. 1968):
    "What he is losing, * * *, is the possibility that if he appeared before the board he might persuade it to decide in his favor. Of course this loss, in

practical, human, terms is serious and involves a chance for at least qualified liberty."

In any event, whatever the value to plaintiffs of this *chance* for qualified liberty, it is hardly the equivalent of actual release from custody and as such is distinguishable from recent decisions of our Court of Appeals, Rodriguez v. McGinnis, 451 F.2d 730 (2d Cir., 1971); United States ex rel. Katzoff v. McGinnis, 441 F.2d 558, (2d Cir., 1971), holding that where release from penal custody is sought, the habeas corpus statute—and not the Civil Rights Act—provides the appropriate remedy and requires the exhaustion of state remedies.

denied good time credit for the time spent in county jail and must content themselves with the partial measure of credit allotted to them for the period of their state prison confinement alone. Such a difference in treatment between persons sentenced to state prison for like terms of imprisonment smacks of discrimination on its face.

Thus, the real question, and indeed the only question, before the court is whether a rational basis exists for the distinction made by § 230(3) between jail and non-jail defendants in the awarding of good time credit. We find the requisite rationality lacking. It is true that the Equal Protection Clause requires only that "the State's action be rationally based and free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 497 (1969). Indeed, even though a state's practice may be discriminatory and substantially harm those who are the subject of the discrimination, the practice may still be constitutionally permissible if it serves a valid governmental objective. Thus, for example, although the requirement of bail pending trial substantially discriminates against the indigent defendant, such a classification of "jail versus bail" is constitutionally sanctioned by the Eighth Amendment as a reasonable means for insuring a defendant's appearance in court. See, e. g., Morris v. Crumlish, 239 F.Supp. 498, 500 (E.D.Pa.1965). Nevertheless, while laws may create such distinctions and classifications, they must be related to the purposes of the law itself, and artificial distinctions not so reasonably related will not be countenanced.

It is defendants' position that state prisons differ from county jails in respect to purpose, usage and availability of facilities and that the exclusion of jail time in the computation of good time is therefore altogether reasonable and proper. They point out that state prisons (unlike county jails, which exist primarily as detention facilities) are designed to serve the additional goal of rehabilitation, and as a result maintain long-term educational and vocational programs (absent from the county jail system) to meet that end. Defendants contend that good time is granted as an incentive to the inmates to participate in these prison rehabilitation programs and that, since county jails are not equipped to provide such services, there is no basis for granting good time for time served therein. If it were clear that the awarding of good time was based solely and exclusively on an evaluation of an inmate's performance in such programs so endemic to the state prison system, the denial of good time for jail time might be understandable; however, this does not appear to be the case. Rather, it seems that the overriding consideration in the granting of good time reductions is the maintenance of prison discipline. Defendants themselves have observed upon the legislature's recognition of good time credit as "an effective disciplinary device" (Defendants' Memorandum, p. 20), and indeed, a New York state court, even though upholding the constitutionality of § 230(3), has stated:

"The policy underlying the discretionary grant of good time reductions is clear. The attitude and conduct of prisoners should improve if they are offered an incentive for good and productive behavior while at the same time the fact that reductions can be withheld will inhibit bad conduct." Perez v. Follette, 58 Misc.2d 319, 321, 295 N.Y.S.2d 231, 233 (Sup.Ct., Dutchess County, 1968); aff'd 31 A.D.2d 600, 295 N.Y.S.2d 608; motion for leave to appeal dismissed as moot, 23 N.Y.2d 737, 296 N.Y.S.2d 569, 244 N.E. 2d 83 (1968).

That good time is granted primarily as an incentive for good behavior and as a deterrent to misconduct is demonstrated in other more practical ways as well. Surely the state's argument is undercut when it is realized that a prisoner is immediately and automatically credited with a maximum allowance of good time credit for *future* good behavior at the time his minimum parole date is initially fixed upon his arrival in state prison.

In effect, then, a prisoner does not "earn" good time credit as time goes on for exemplary performance in assorted prison programs but rather simply avoids being penalized for bad behavior. Indeed, Section 235 [8] expressly provides that good time may be withheld in whole or in part as "punishment for offenses *against the discipline* of the prison or penitentiary" (emphasis added), and that unless credit is so withheld as punishment, the "[r]eduction credited to a prisoner in the first instance, * * *, shall stand as the reduction allowed."

Defendants' position is also undermined by the fact that the state *does* grant good time credit for pre-sentence jail time both in the case of the county penitentiary inmate and in the case of the indeterminate sentence prisoner's statutory release date from state prison.[9] As the convening court observed,

"In both instances jail time is included in the computation of a prisoner's good time allowance despite the fact that the type of activity required of an inmate to earn good time credit in a county penitentiary or in state prison is allegedly vastly different from that which could be required of an individual incarcerated in county jail." Royster v. McGinnis, supra, 327 F. Supp. at 1323.

Defendants attempt to explain this anomaly by suggesting that, since release of a state prisoner at the time of his statutory release date (that is, prior to the *maximum* date of his indeterminate sentence) and release of a county penitentiary inmate (that is, one convicted of a non-felony offense) do not require the Parole Board to make nearly so sensitive an evaluation of a prisoner's conduct and potential for early release as it must in deciding to release a prisoner prior to the expiration of his *minimum* term set by a sentencing judge, the legislature [10] could reasonably decide to grant such prisoners credit for good conduct in county jail regardless of the evaluation time lost to the Parole Board as a result thereof.

Whatever the merit in defendants' attempted distinction (see below), the fact remains that state prisoners can be, and, under certain circumstances, are, granted good time credit for jail time for reasons other than as a reward for participation in the various rehabilitative programs of the state prison system. The awarding of good time for jail time to these two classes of prisoners only reinforces the belief that the legislature's primary aim in enacting the good time statute was to foster and insure the maintenance of prison discipline. If this be the case, as it clearly seems to be, the particular time or place of an inmate's incarceration would be irrelevant to a determination of his maximum good time allowance, for the granting of good time credit for time served *both* before and after sentencing, whether by county jail or state prison authorities, "would serve the greater goal of inducing good behavior by the prisoners throughout the total period of their confinement." Phipps v. McGinnis, supra, 327 F.Supp. at 1323 (1970).

In this regard it should be noted that plaintiffs' requested change in the

---

8. Section 235 (as well as the other provisions of Article 9 of the Correction Law) was repealed as of the 60th day after May 8, 1970, but it and most of the other provisions here relevant continue to apply in cases—such as plaintiffs'—where the sentence involved is for an offense committed prior to September 1, 1967, the effective date of the new Penal Law. See note under § 230, Correction Law (McKinney Supp.1970).

9. Indeed, at oral argument, the court was informed that when state prisoners are returned, subsequent to their original transfer to state prison, to county authorities in connection with court appearances on post-trial writs of coram nobis, they are granted good time credit for such jail time as well.

10. The history of § 230 reveals that, at least with regard to the computation of a prisoner's statutory release date under § 230(4), it was the courts—and not the legislature—which decided that good time credit must be granted for time served in county jail. See the cases cited in footnote 3 above and accompanying text.

method of computing good time credit for minimum release could undoubtedly be accomplished without imposing great expense or administrative burden upon the state. County jail officials could simply certify to state prison authorities whether or not a particular prisoner is entitled to good time credit for the time he spent in the county institution. In fact, as the convening court observed earlier, "whatever method is now used by state authorities to compute the good time allowance of a county penitentiary prisoner, or, indeed, of an indeterminate sentence prisoner for purposes of his statutory release, could seemingly be employed here as well." Royster v. McGinnis, supra, 327 F.Supp. at 1323.[11]

Thus, while it may be technically true that state officials have no jurisdiction, at least from an administrative point of view, over inmates awaiting trial in county jails, it is grossly unfair that "plaintiffs and other prisoners like them should be made to bear the yoke of unequal and prolonged confinement merely because of the administrative division of labor between county and state prison authorities." Royster v. McGinnis, supra, 327 F.Supp. at 1323. Certainly this is all the more so where, as here, county officials are fully able and equipped to help state authorities achieve the *legislative* goal of prisoner discipline at all correctional levels and the *constitutional* goal of equal treatment under the law. In a case such as this, involving the deprivation of rights secured by the

Fourteenth Amendment, both state and county institutions must surely be deemed agencies of the same state government. A distinction in the allowance of good time credit cannot rationally be drawn based upon the type of institution in which the incarceration occurs.

Defendants make one further argument for rationality based upon the purported difference in roles between state prison and local jail officials. They contend that, since it is the state (and not the county) correction authorities who must ultimately make the sensitive decision whether to release a prisoner prior to the expiration of his minimum sentence, the granting of good time (which, in turn, leads to an earlier minimum parole date) should be based solely on the personal evaluation of a prisoner's conduct by state officials while he is actually confined in their custody. In other words, good time credit should not be awarded for jail time because it will result in a prisoner being released on parole before state authorities have had an adequate opportunity to pass upon his readiness therefor. Such fears are wholly illusory, however, for the mere granting of good time credit for jail time need not inhibit state officials in any way in the execution of their admittedly delicate duties. The awarding of good time in and of itself in no way compels the Parole Board to release a prisoner before it has had sufficient time to evaluate him and assure itself of his amenability to parole.[12]

---

11. Significantly enough, a close reading of the Correction Law suggests that an administrative mechanism for the computation of a state prisoner's good time credit for jail time for purposes of minimum release has long been available to defendants, and that county jail officials themselves have been long accustomed to judging their own prisoners' eligibility for good time credit under a statutory standard almost identical to that imposed upon state correction authorities by § 230. See Correction Law §§ 250, 252, now repealed but still applicable in cases where the sentence involved is for an offense committed prior to September 1, 1967, and note under §§ 250–254, Cor-

rection Law (McKinney Supp. 1970). Nor would there appear to be any difficulty involved in the transfer of an inmate's *good time* record from county jail to state prison authorities, for county officers have for many years been required to deliver to state authorities, upon a prisoner's commitment and transfer to state prison, very similar records regarding such prisoner's *jail time* credit. See § 2193(1) of the old Penal Law and § 489–a of the Code of Criminal Procedure.

12. As the convening court noted, "If the Board should feel that there has not been sufficient time for evaluation by state officials of the prisoner's conduct

Indeed, it is quite possible that, even if a prisoner had been under the careful eye of state prison authorities for the entire period of his incarceration and had earned good time credit throughout such period, the Board might still feel that he should not be released (and, in fact, would not have to release him) at the time of his minimum parole date. Thus, while the Parole Board's actual decision to release a prisoner on parole should certainly be based on adequate personal observation and evaluation by the releasing officials themselves,[13] the mere decision to award a prisoner good time for time spent in county jail need not be so based since the granting of good time (whether for time served in jail *or* prison) is simply not synonymous with actual release from prison—at least in the case of minimum release. Indeed, Section 213 specifically provides that:

"Discretionary release on parole shall *not* be granted merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." (emphasis added).

Defendants' final contention—that plaintiffs are really not challenging the good time provisions of § 230 but rather the consequences of the bail system—

was fully considered in the opinion of the convening court, and this court adopts those conclusions.[14]

## CLASS ACTION

The requirements of Rule 23, Fed.R.Civ.P., having been met, plaintiffs' request for the declaration of a class action is granted. The class which plaintiff seek to represent is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the representative parties are typical of the claims of the class; the representative parties will protect, and in fact have protected, fairly and adequately the interests of the class; and the defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole. That this suit should be maintained as a class action is demonstrated by defendants' own representation that "any final decisions by the federal courts declaring the provision of the statute unconstitutional would be accepted and implemented by the state not only with respect to plaintiffs, but with respect to all prisoners whose time is computed pursuant to the statutory provision" in question. (Defendants' Memorandum, p. 41). Defendants' suggestion (rather inconsistent with the latter representation) that class relief is inappropriate here because "[m]any prisoners no doubt have received sentences which take into account the fact

---

and his potential for early release, it can simply refuse to release him, and, barring an excessive abuse of discretion in this regard, such a sensitive determination would not be subject to judicial review." Royster v. McGinnis, supra, 327 F.Supp. at 1323.

13. It is interesting to note that the sensitive decision to release a prisoner on parole is not even made by those correction authorities who have actually had the prisoner under their supervision during the period of his state prison incarceration. Rather, this determination is vested solely within the discretion of the Parole Board under the criteria set forth in § 213 infra. The Department

of Correction, by awarding the requisite good time, merely certifies that the particular prisoner is legally *eligible* for parole consideration.

14. It should be noted that the court has not relied on the indigence of the plaintiffs or their class members in holding § 230 (3) to have created an unreasonable classification. The invidious discrimination here is not necessarily between the rich and the poor, but rather between the jailed and the non-jailed. Of course, in reality, the weight of pre-sentence incarceration falls most heavily on the indigent, but it is certainly not reserved for him alone.

that good time cannot be earned on jail time" (Defendants' Memorandum, p. 41) is without any support in the record and altogether hypothetical. In view of the constitutional deprivation imposed on plaintiffs and their class by § 230(3), this court cannot simply "presume" that any, let alone all, of the numerous sentencing courts involved meticulously adjusted the sentences they imposed to compensate for the statutory denial of good time credit (often of only a few days duration) here declared unconstitutional.

Inasmuch as it would be impracticable and potentially disruptive of prison routine to require that notice be given to class members of plaintiffs' action and the decision herein, and inasmuch as notice is not necessary "for the protection of the members of the class or otherwise for the fair conduct of the action," Rule 23(d), Fed.R.Civ.P., notice to the members of the class need not be given. Indeed it is difficult to imagine that any member of the class would "opt out" if he were given notice.

In view of the foregoing, § 230(3) of the New York Correction Law, insofar as it denies good time credit for jail time to indeterminate sentence prisoners in the computation of their minimum release date, is hereby declared unconstitutional, and defendants will be permanently enjoined and restrained from enforcing it so as to deny such credit to plaintiffs and members of their class. The class is defined to include all prisoners who are presently serving indeterminate sentences[15] in state prison for offenses committed prior to September 1, 1967, who served time in county jail prior to trial and sentence to state prison, who have not yet reached their minimum release date, and who have not as yet elected the conditional release program under § 230–a of the Correction Law.

Submit decree on notice.

HAYS, Circuit Judge (dissenting):

If a classification made by a state has some reasonable basis it does not violate the equal protection clause. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 497 (1970).

There seems to me to be a reasonable ground for distinguishing in the award of good time credit between time spent in state prison under the supervision of the state prison authorities and time spent in county jail under the supervision of local authorities. It was surely not wholly arbitrary for the legislature to provide that the Parole Board should have the power to act upon a prisoner's application only after the prisoner has spent a fixed proportion of his sentence in a place where his conduct has been under the observation of state prison officials rather than in a local jail.

Under the guise of applying constitutional principles federal judges are increasingly taking over from the states the administration of state prison systems. In this case, as in a number of others recently decided, the assumption of these new duties appears to be based rather on the judges' conviction that they can administer state prisons more wisely than can the state authorities, and not on any compelling constitutional considerations.

15. The rationale of this decision would appear to apply with equal force to "definite sentence" prisoners—that is, those prisoners sentenced to a "sentence to imprisonment in a state prison for a definite fixed period of time," § 230(1)—who are similarly denied good time credit for jail time by § 230(3). This issue, however, has not been raised in the instant litigation, and such prisoners have therefore been omitted from the class.