Dye, J.
Following Chiropractic Assn. of N. Y. v. Hilleboe (12 N Y 2d 109 [decided Dec. 31, 1962]), the Legislature enacted article 132 of the Education Law, entitled “ Chiropractic ” (L. 1963, chs. 780-781, eff. July 1,1963). It was a new, complete, comprehensive and self-contained enactment for the licensing of the practice of chiropractic in New York State.
The plaintiffs are suing on behalf of themselves and all other chiropractors in New York who are similarly situated for a *394 judgment declaring the act or portion thereof invalid as to them, on constitutional grounds, and for injunctive relief.
The Appellate Division, Second Department, has unanimously affirmed without opinion an order of the Supreme Court, Westchester County (Donohoe, J.), which granted without a hearing defendant’s motion to dismiss the complaint for insufficiency, it being of the view that article 132 is in all respects constitutional and valid. The appeal is here as of right on constitutional grounds.
The complaint alleges grievances affecting chiropractors, falling generally into nine groups, the specifications of which, for purposes of this appeal, need not detain us, since the primary dispositive and over-all issue is whether the complaint is sufficient to allege the unconstitutionality of the statute, that is, whether the statute, as an exercise of the police power in furtherance of the public health, is unreasonable or, in brief, is the legislation appropriate to the licensing of chiropractors?
These plaintiffs and other candidates for licenses to practice chiropractic and those classes of chiropractors presently practicing who are required to do so took examinations under date of April 7 and 8, 1964 in anatomy, physiology, chemistry, hygiene, bacteriology, pathology and diagnosis. Alleging that they would be ‘ ‘ irreparably injured by the humiliation and loss of reputation resulting from their failure to pass ” said examination, plaintiffs then moved for a stay to restrain the Commissioner of Education and the Board of Regents from marking the examinations pending the determination of the appeal herein.
The challenged legislation provides that it shall be a misdemeanor for any person not licensed as provided in article 132 of the Education Law to practice chiropractic after October 1, 1964 (Education Law, § 6561, subd. 1, par. d).
Section 6552 (subd. 1) requires all applicants (except certain classes with prior practice and experience, who may be blanketed in under the grandfather clause, and certain others with prior experience, but not to be covered in) to pass written examinations administered by the department in clinical chiropractic analysis and in X ray as it relates to chiropractic analysis and the practice of chiropractic, and written examinations in the following basic subjects: anatomy, physiology, chemistry, *395 hygiene, bacteriology, pathology and the diagnosis and use and effects of X ray.
It also provides (subd. 2) that, in respect to the basic subjects, the department shall use the questions prepared for the same subjects in the examinations pursuant to sections 6507 and 6508 of the Education Law, which sections refer to examinations given to applicants for licenses for the professional practice of medicine, osteopathy and physiotherapy. This requirement, the plaintiffs allege in different ways, depending on the class group in which the plaintiffs fall and as between the groups, is grossly unfair to present practitioners, and applicants for licenses, and amounts to discrimination contrary to due process and equal protection, for the reason that, in addition to having satisfied preliminary qualifications as to citizenship, moral character and schooling, chiropractors of less than 2 years’ practice experience are required to take the same examinations in basic subjects given applicants for medical certificates (§ 6556, subd. 3, pars, a, b); that chiropractors of between 2 and 7 years’ practice experience must take a similar examination and those between 7 and 15 years ’ practice experience an examination prepared by the department “in * * * the fundamentals of anatomy and physiology ” (§ 6556, subd. 2, pars, a, b) and those with over 15 years’ practice experience are to be admitted without examination in the basic subjects. This, they contend, points up a distinction as between “ groups ” of chiropractors and between chiropractors and other groups licensed to practice in the field of human health, since the statute also requires all applicants to pass “ examination[s] prepared by the board ” in the practice of chiropractic and an examination in “ the use and effects of X-ray ” (§ 6556, subd. 1, par. g). It is contended that requiring all applicants for a chiropractic license to take and pass an examination in the use and effects of X ray when the same is not required by applicants for a medical certificate, dentistry and osteopathy is an unreasonable discrimination, as the latter also practice in the field of human health.
The main thrust is directed to the disabilities explicitly imposed on licensees in the practice of chiropractic, which they contend points up the inappropriateness and the inherent unfairness of the examination, viz.: “ ‘ The practice of chiropractic ’ ”, according to the statute, “ means a method of *396 detecting and correcting, by manual or mechanical means essential to the practice of chiropractic, structural imbalance, distortion, or subluxation in the human body for the purpose of removing nerve interference and the effects thereof, where such interference is the result of or related to distortion, misalignment or subluxations of or in the vertebral, column.” (Education Law, § 6550, subd. 4.) The statute further makes it clear that the practice of chiropractic, as above defined, ‘‘ is hereby declared not to be the practice of medicine, or osteopathy, or physiotherapy within the meaning of the laws of the state of New York defining the same ” (§ 6558, subd. 2). It is further provided by subdivision 3 that a license to practice chiropractic shall not permit the holder thereof:
“a. to practice obstetrics, psychiatry or any medical, surgical or paramedical specialty or sub-specialty;
“b. to perform surgery of any kind or to reduce fractures or dislocations;
“ c. to treat for any of the following conditions: any infectious diseases such as pneumonia, any communicable diseases listed in the sanitary code of the state of New York, any of the cardiovascular-renal or cardia-pulmonary diseases, any surgical condition of the abdomen such as acute appendicitis, or diabetes, or any benign or malignant neoplasms.
“ d. to prescribe, administer, dispense or use in his practice biologicals, drugs, medicines, sera, vaccines or hormones ”.
Because of the limitation thus placed upon the practice of a licensed chiropractor, the requirement respecting an examination in the named “ basic subjects ” as well as the requirement to pass an examination in the use and effects of X ray, according to the complaint, is discriminatory in its application since, by its terms, chiropractors presently practicing, depending on the period engaged, may be licensed without having to pass an examination in these fields; others, upon passing an examination in ‘‘the fundamentals of anatomy and physiology ’ ’, while still others must receive passing marks in the several designated ‘ ‘ basic subjects ’ .
Requiring chiropractic examinees to pass an examination in the use and effects of X ray is denounced as being uneven and discriminatory in its application since others engaged in the field of public health—such as applicants for licenses to prac *397 tice medicine, dentistry, podiatry and osteopathy—are not so required, thereby denying these plaintiffs and others similarly situated equal protection of the law as guaranteed by section 11 of article I of the New York State Constitution and the Fourteenth Amendment to the Federal Constitution.
This phase of the constitutional challenge requires no lengthy comment. The need to regulate and confine the use of X ray to qualified personnel was all explored in Chiropractic Assn. of N. Y. v. Hilleboe (supra). There, regulation 19 of chapter XVI of the Sanitary Code (prohibiting the application of radiation to a human being by anyone not licensed or otherwise authorized to practice medicine, dentistry, podiatry or osteopathy—but not prohibiting the use of radiation by a technician, nurse or other person—unless such use is directed or ordered by a person so licensed or authorized to practice for use in his field) was upheld as a valid delegation of legislative power and not unconstitutional. Since the use of X ray relates to a field where chiropractors will be practicing, it is neither unreasonable nor inappropriate to require chiropractic license applicants to demonstrate a proficiency in that area. In short, the provisions requiring an examination in the use and effect of X ray are not violative of the equal protection clause.
The contention aimed at the unconstitutionality of the statute requiring examination in the basic subjects pursuant to subdivision 2 of section 6552 of the Education Law (“ the department shall use the questions prepared for the same subjects in the examination pursuant to sections sixty-five hundred seven and sixty-five hundred eight of this title ”) is more subtle. Chiropractic— dealing as it does with the detection and correction of “ structural imbalance, distortion, or subluxation in the human body for the purpose of removing nerve interference and the effects thereof ” (§ 6550, subd. 4) on the nervous system—is intimately and inextricably connected with human health and well within the area of the State’s police power. In fact, plaintiffs concede that the fields of healing art, medicine and chiropractic— though diverse—may and sometimes do overlap. Statutory validity is favored by a presumption of constitutionality (Lincoln Bldg. Assoc. v. Barr, 1 N Y 2d 413; Johnson v. City of New York, 274 N. Y. 411; South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177; United States v. Carotene *398 Prods. Co., 304 U. S. 144) and it is also a maxim of the judicial function that ‘‘ courts do not substitute their social and economic beliefs for the judgment of legislative bodies ” (Ferguson v. Skuppa, 372 U. S. 726, 730). And, even when error is committed in the exercise of legislative discretion, the courts may not correct it (Williams v. Mayor, 289 U. S. 36). I do not apprehend, and neither did the courts below, that it is the function of this court to determine whether “ the public policy that finds expression in legislation of this order is well or ill conceived ” (opinion below, 43 Misc 2d 14, 17).
“ The power of the legislature”, as the learned Justice at Special Term put it, “ to require proof of competence in a given field which will affect public interest has been adequately demonstrated (People ex rel. Nechamcus v. Warden, 144 N. Y. 529, 536 * * *) subject always to judicial review to determine whether regulation by license serves the public interest (Hauser v. North British & Mercantile Ins. Co., 206 N. Y. 455, 461) and to the prohibition against delegation of legislative powers to administrative officers. (Matter of Seignious v. Rice, 273 N. Y. 44, 49.) ” (43 Misc 2d 16.)
Here, we are dealing with the sufficiency of the complaint to state unconstitutionality of a duly enacted statute for the licensing of the practice of chiropractic. It was enacted after we had said it did not transcend the police power of the State for the Public Health Council to rule that the unfamiliarity of chiropractors with the effects of radiation in the wholesale use of X ray constituted a danger to the public health (Chiropractic Assn. of N. Y. v. Hilleboe, supra). The conditions requisite to obtaining a license are specific, detailed and comprehensive. The imposition of a new requirement for the continued practice of a profession previously carried on without the need of such requirements does not violate the Constitution (Gray v. Connecticut, 159 U. S. 74). Grandfather clauses are common incidents of licensing, a recognition of practical experience in the practice of chiropractic for a period of time — a perfectly reasonable basis to exempt from the necessity of taking examinations (4 ALB 2d 670). Nothing turns on the circumstance that the Legislature excused under the grandfather clause some and not others from passing the basic subject test. Neither can it reasonably be said that requiring an applicant for license *399 to practice chiropractic to pass tests in basic subjects constitutes an arbitrary and unreasonable exercise of legislative power. While it is true that the statute draws a distinction between the practice of medicine, osteopathy or physiotherapy, as defined by the applicable statute, and the practice of chiropractic and, in so doing, defines and limits the rights of licensed chiropractors in fields of practice deemed as belonging to the practice of medicine, osteopathy or physiotherapy (§ 6558), the practice of chiropractic is nonetheless one that deals with human health which has always been regarded and treated as a matter of public concern. “ It is too well settled to require discussion at this day that the police power of the States extends to the regulation of certain trades and callings, particularly those which closely concern the public health.” (Watson v. Maryland, 218 U. S. 173,176.)
Chiropractic, having to do with the health and well-being of the people, requires a high degree of general knowledge and technical skill and is a field where the power of the State may well be asserted to make sure that only properly qualified persons shall undertake its responsible and difficult duties. As the Justice below pointed out, the challenged statute has conferred on chiropractors privileges which we have held they could not claim as a matter of constitutional right (Chiropractic Assn. of N. Y. v. Hilleboe, supra). This is ample to meet the challenge that the statute is unconstitutional.
The order appealed from should be affirmed, without costs.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Scileppi and Bergan concur.
Order affirmed.