425 F.2d 869
 Walter W. D. HEANEY, James J. Barile, Frank P. Mechler, B.
L. Black, Reginald Gold and Barry Markson,
Plaintiffs-Appellants,
v.
James E. ALLEN, Commissioner of Education of the State of
New York, Julius Dintenfass, Bernard Lewis, Mahlon Blake, C.
Gorham Beckwith, John B. Long and Sam J. Pilliero,
constituting the State Board of Chiropractic Examiners,
Howard J. Mosher, Secretary of the State Board of
Chiropractic Examiners and Louis J. Lefkowitz, Attorney
General of the State of New York, Defendants-Respondents.
 No. 389, Docket 33683.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 6, 1970.
Decided Feb. 5, 1970.
 
 Joseph Goldberg, New York City, for plaintiffs-appellants.
 Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, and Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for defendants-respondents.
 Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and JUDD, District Judge.[1]
 FRIENDLY, Circuit Judge.
 
 
 1
 This is one of the increasing number of cases in which plaintiffs who sought the convening of three-judge courts to declare state statutes unconstitutional and to enjoin their enforcement have appealed from orders of district judges denying their requests and dismissing the complaints for want of a substantial federal question. See, e.g., Miller v. New York Stock Exchange, 2 Cir., 425 F.2d 1074, decided January 2, 1970.
 
 
 2
 Here the plaintiffs are doctors of chiropractic, and the statute is Article 132 of the New York Education Law, McKinney's Consol.Laws, c. 16, 6550-6565, which prohibits the practice of chiropractic without a license. At the time this suit was brought, applicants for licenses were required 'to pass written examinations in clinical chiropractic analysis, X-ray as it relates to chiropractic analysis, and the practice of chiropractic, and a written examination in the following basic subjects: anatomy, physiology, chemistry, hygiene, bacteriology, pathology, diagnosis and the use and effects of X-ray.' Grandfather clauses prescribed progressively less rigorous requirements for chiropractors who had practiced for more than two, seven and fifteen years before the effective date of the statute. The Board of Regents was directed to appoint a sevenman Board of Chiropractic Examiners, of whom four would be chiropractors, one a practitioner of medicine, one an osteopath, and one an educator holding a doctorate or equivalent degree in one of the 'basic subjects.' The Board of Chiropractic Examiners was to prepare and submit to the Department of Education questions for the examinations in clinical chiropractic analysis, the use and effects of X-ray, and the practice of chirporactic, and to examine and rate the papers on these subjects. The Department was to use the questions in the 'basic subjects' prepared for the examination for licenses to practice medicine by the Board of Medical Examiners, all of whom must be licensed physicians. An amendment adopted on May 22, 1969, Laws c. 737, directed the Department itself to prepare the questions in the 'basic subjects,' which were slightly altered by substituting microbiology for hygiene and bacteriology. The Department was to examine and rate the papers in the basic subjects. Plaintiffs object to New York's licensing provision as an abridgement of their 'constitutional right to earn a living,' and further contend that even if New York may impose appropriate restrictions on the practice of chiropractic, the restrictions of Article 132 are unreasonable and void because the 'basic subjects' have no reasonable relation to the science of chiropractic and because the statute, rather than being a legitimate effort by New York to protect the health of its people, is a thinly disguised attempt by the medical profession to 'kill' chiropractic, a conclusion they contend is confirmed by the preparation of the questions in the 'basic subjects' by physicians.
 
 
 3
 The district court properly held that the question sought to be raised was not substantial under the second standard announced by the Supreme Court in the familiar passage from California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938), namely, 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject.' Here the foreclosure comes in the plainest way. This very statute was before the Supreme Court on appeal from a unanimous decision by the highest court of New York sustaining its constitutionality, Wasmuth v. Allen, 14 N.Y.2d 391, 252 N.Y.S.2d 65, 200 N.E.2d 756, and the Court dismissed the appeal for want of a substantial federal question, 379 U.S. 11, 85 S.Ct. 86, 13 L.Ed.2d 23 (1964). Although plaintiffs say that in Wasmuth the sole constitutional attack was under the equal protection clause and not under the due process clause of the 14th Amendment, we find no basis for this in the opinion of the New York Court of Appeals, 14 N.Y.2d at 394, 395, 252 N.Y.S.2d at 66-67, or in the jurisdictional statement in the Supreme Court. To the contrary the attack seems to have been on the precise grounds here urged, except for the point as to the use of questions in the 'basic subjects' prepared by physicians for applicants for a license in medicine, which seems unsubstantial and has been mooted for the future, and some colorful quotations from physicians, which are not attributable to the New York Legislature. Despite a student view that little effect should be given to Supreme Court decisions with respect to substantiality made on motions not orally argued, 68 Colum.L.Rev. 785 (1968), we continue to hold our considered position that 'unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise.' Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 263 & n. 3 (1967).
 
 
 4
 There are no such doctrinal developments here, indeed quite the opposite. Even in a day when the Supreme Court was far more prone to invalidate state regulatory statutes on the basis of substantive due process than now, it sustained a Louisiana statute with respect to chiropractic considerably more restrictive than New York's. Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594 (1926), aff'd per curiam, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324 (1927). Thirteen years later the Court found no substantial federal question in a challenge to an Arkansas statute, construed as requiring chiropractors to obtain a certificate of ability in anatomy, physiology, chemistry, bacteriology and pathology, on the ground that the two latter subjects were unrelated to the practice of chiropractic. Stroud v. Crow, 199 Ark. 814, 136 S.W. 2d 1025, appeal dismissed for want of a substantial federal question, 311 U.S. 607, 61 S.Ct. 17, 85 L.Ed. 385 (1940). If it be said that these cases are old and that chiropractic may have a higher stature today, the answer lies not only in the Wasmuth decision of 1964 but in the subsequent rejection of a second attack on the Louisiana statute, this time before a three-judge court, in the long litigated case of England v. Louisiana State Board of Medical Examiners, 246 F.Supp. 993 (E.D.La.1965), aff'd without opinion, 384 U.S. 885, 86 S.Ct. 1924, 16 L.Ed.2d 998, rehearing denied, 385 U.S. 890, 87 S.Ct. 15, 17 L.Ed.2d 123 (1966).
 
 
 5
 Plaintiffs complain that they were denied an opportunity to present, at an evidentiary hearing, facts which they claim would show that, despite this seemingly insurmountable array of authorities, the questions sought to be aired were nevertheless substantial. But the State's motion, under F.R.Civ.P. 12(b), was addressed to the complaint and asserted that it advanced no constitutional claim sufficiently substantial to sustain federal jurisdiction. See Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Although the State's moving affidavit contained certain factual material in answer to the affidavit in support of the motion for a temporary injunction, we do not find that this played any part in the decision.
 
 
 6
 Plaintiffs also invite us to adopt the view enunciated by Chief Judge John R. Brown of the Fifth Circuit in Jackson v. Choate, 404 F.2d 910 (1968), that, except in 'an open and shut case,' it is better to 'constitute a 3-Judge Court, and allow that court to determine initially' whether it should have been constituted. Whatever the problems of the Fifth Circuit may be, we respectfully decline the invitation. If a three-judge court is once assembled, the temptation to stay together is strong. Indeed, as pointed out in Swift & Co. v. Wickham, 230 F.Supp. 398, 410 (S.D.N.Y.1964), appeal dismissed for lack of jurisdiction, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), aff'd, 364 F.2d 241 (2 Cir. 1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967), it is usually rather idle for the three judges to waste time deciding whether they have been properly assembled, since the three-judge court has jurisdiction in any event whereas a wrong decision to return the issue to a single judge can create all sorts of trouble. The Fifth Circuit practice thus means in effect not only that three judges will have been called together to decide a question that in fact was determinable by one but that an appeal will almost certainly be added to the Supreme Court's docket, an unfortunate burden on that overworked tribunal, even though it may ultimately dispose of the appeal on motion. An occasional reversal because a court of appeals will disagree with respect to the substantiality of the question is far less wasteful of judicial resources. Until Congress takes desperately needed action to rationalize the three-judge statutes, as the American Law Institute has proposed, Study of Division of Jurisdiction between State and Federal Courts, 1374-76 and pp. 316-35, the best course for this circuit is for single district judges to continue conscientiously to pass upon the substantiality of constitutional attacks on state statutes, see Boone v. Wyman, 295 F.Supp. 1143 (S.D.N.Y.), aff'd per curiam, 412 F.2d 857 (2 Cir. 1969), and, where this court unanimously agrees that the attack is without merit, for us not to be finical on whether the lack of merit was obvious. See Green v. Board of Elections of City of New York, 380 F.2d 445, 448-449 (1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968); Miller v. New York Stock Exchange, supra, 425 F.2d 1074. In any event, this case is an 'open and shut' one where a three-judge court would not be needed even on the Fifth Circuit's view.
 
 
 7
 Affirmed.
 
 
 
 [1]
 Of the Eastern District of New York, sitting by designation