**Philip AQUAFREDDA et al., Plaintiffs,**

v.

**Howard A. JONES et al., Defendants.**

No. 72 Civ. 1872.

United States District Court,
S. D. New York.

Oct. 26, 1972.

The Legal Aid Society, New York City by William E. Hellerstein, Stanley Neustadter, New York City, and Robert A. Naidus, Brooklyn, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City by Samuel A. Hirshowitz and Arlene R. Silverman, New York City, for defendants.

Before MULLIGAN, Circuit Judge, and BRIEANT and BAUMAN, District Judges.

BRIEANT, District Judge.

Plaintiffs, persons who have been certified to the New York Narcotics Addiction Control Commission pursuant to § 208 et seq., New York Mental Hygiene Law, McKinney's Consol.Laws c. 27, following criminal convictions, on May 5, 1972 brought this action for declaratory and injunctive relief pursuant to 42 U. S.C. § 1983 and 28 U.S.C. § 2201. Each plaintiff has been certified for the full permissible period of 36 months provided by the statute. Each has been held in pre-trial and pre-sentence detention for varying periods of time in lieu of bail; six months in the case of Aquafredda, 175 days for Martinez and 12 days for Crosby.

Defendants are the members of the Narcotics Addiction Control Commission of the State of New York, state officials responsible for the administration and direction of New York's Narcotic Addiction Program (New York Mental Hygiene Law, § 200 et seq.).

Plaintiffs assert that they and others similarly situated, for whom they seek leave to bring this litigation as a class action under Rule 23(b)(2), F.R.Civ.P., have been deprived of liberty by defendants under color of state law, in that defendants have, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, denied plaintiffs and members of the class which they seek to represent of "credit for presentence jail time towards the term of their ultimate sentence to the Narcotic

Addiction Control Commission." (Plaintiffs' Memorandum, p. 1)

This statutory court, pursuant to 28 U.S.C. § 2281, has been convened pursuant to an order dated July 17, 1972, made by Hon. Irving R. Kaufman, Acting Chief Judge of the Court of Appeals for the Second Circuit.

No contested issues of fact exist. It is alleged, and not denied, that each plaintiff was held in pre-trial detention for want of bail solely because of indigency; he was unable to afford the bail set by the state trial court.[1]

By chapter 192 of the laws of 1966, effective April 1, 1966, the State of New York enacted Article 9 of the Mental Hygiene Law entitled "Drug Addiction". The legislature made findings of fact.[2]

The legislative purpose was stated as "to provide a comprehensive program of human renewal of narcotic addicts in rehabilitation centers and aftercare programs." (§ 200(3), Mental Hygiene Law.) That program applies equally by its terms to addicts who are not accused of crime, to addicts accused of crimes, and to those convicted. The program is further designed to "protect society against the social contagion of narcotic addiction and to meet the need of narcotic addicts for medical, psychological and

1. Each of these plaintiffs has been found to be a narcotic addict, addicted to heroin. Addicts, because of the demoralizing effect of their affliction, make poor bail risks. More stringent bail requirements are usually imposed in such cases. There were estimated to be over 150,000 addicts in 1971 in New York City alone. See The Manhattan Bail Project, in "Programs in Criminal Justice Reform", Vera Institute of Justice, Ten-Year Report, 1961–1971, pub. New York, N.Y., May, 1972, Library of Congress No. 72–86132, pp. 28, 38–9, 150.

2. These legislative findings are comprised in § 200 thereof, as follows:

§ 200. Declaration of purpose

The legislature finds and determines as follows: 1. The human suffering and social and economic loss caused by the disease of drug addiction are matters of grave concern to the people of the state. The magnitude of the cost to the people of the state for police, judicial, penal and medical care purposes, directly and indirectly caused by the disease of drug addiction, makes it imperative that a comprehensive program to combat the effects of the disease of drug addiction be developed and implemented through the combined and correlated efforts of federal, state, local communities and private individuals and organizations.

2. A comprehensive program of compulsory treatment of narcotic addicts is essential to the protection and promotion of the health and welfare of the inhabitants of the state as well as to discourage the violation of laws relating to the sale, possession and use of narcotics and other dangerous drugs. Narcotic addicts are estimated to be re-

sponsible for one-half the crimes committed in the city of New York alone and the problem of narcotic addiction is rapidly spreading into the suburbs and other parts of the state. This threat to the peace and safety of the inhabitants of the state must be met. Not only crime, but unemployment, poverty, loss of human dignity and of the ability to fill a meaningful and productive role in the community, as well as damage to the physical and mental health of the addict himself are all by-products of this spreading disease. The narcotic addict needs help before he is compelled to resort to crime to support his habit. The narcotic addict who commits a crime needs help to break his addiction. A comprehensive program of treatment, rehabilitation and after-care for narcotic addicts can fill these needs.

3. Experience has demonstrated that narcotic addicts can be rehabilitated and returned to useful lives only through extended periods of treatment in a controlled environment followed by supervision in an aftercare program. The purpose of this article is to provide a comprehensive program of human renewal of narcotic addicts in rehabilitation centers and aftercare programs. The comprehensive program provided by this article is designed to assist the rehabilitation of narcotic addicts. It applies to addicts who are not accused of crime, as well as addicts accused or convicted of crimes. The program is further designed to protect society against the social contagion of narcotic addiction and to meet the need of narcotic addicts for medical, psychological and vocational rehabilitation, while safeguarding the liberty of indviduals against undue interference.

878

vocational rehabilitation. . . ." (§ 200(3), *ibid.*)

By § 205 of the Act, provision was made for the establishment, operation and control by defendants of one or more institutions for confinement, care, treatment, cure and rehabilitation of addicts. A narcotic addict may be committed by civil certification to such facilities (§ 206) after a hearing. Section 208 of the Act provides in substance that where a defendant has been examined medically in accordance with § 207, found to be an addict, and has, in addi-

tion, been found guilty of a misdemeanor or the offense of prostitution, he shall be sentenced by the trial court, after a certain procedure therein provided to litigate the issue of addiction, to "the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate upon the first to occur of (1) the discharge of such defendant by the commission as rehabilitated, or (2) the expiration of a period of thirty-six months from the date such period commenced." [3] Felons so sen-

3. The entire section reads as follows:

§ 208. Proceedings with respect to convicted narcotic addicts

1. Where a defendant has undergone a medical examination pursuant to section two hundred seven of this chapter and has pleaded guilty to or has been found guilty of a felony, misdemeanor or the offense of prostitution the court shall not impose sentence prior to receiving the report of such medical examination. After reviewing such report, if the court is satisfied that the defendant is not a narcotic addict the court shall sentence the defendant in accordance with the provisions of the penal law without regard to the provisions of this chapter. If, however, the court determines, on the basis of the report and such other information as may be before the court, that there is reasonable cause to believe that the defendant is a narcotic addict, the defendant shall be so notified and given an opportunity to admit, deny or stand mute with respect to the issue of whether he is or is not a narcotic addict. Where the defendant admits that he is a narcotic addict and the court is satisfied as to such fact it shall make a finding to that effect and shall sentence the defendant in accordance with subdivision four of this section. Where the defendant denies that he is a narcotic addict or stands mute with respect to such issue the court shall advise the defendant of his right to have a hearing with respect to such issue, and that he may elect to contest such issue either before the court without a jury or at a jury trial as hereinafter prescribed. Provided, however, that the provisions of this subdivision shall not apply if the authorized sentence for the crime is death or life imprisonment.

2. If a hearing pursuant to this section without a jury be requested it shall

be conducted by the court. If the defendant elects a jury trial on the issue of addiction, and the court be one empowered to conduct a jury trial, a jury shall be summoned and the provisions of article forty-one of the civil practice law and rules shall apply. If the court be one not empowered to conduct a jury trial, the matter shall be transferred to the county court or supreme court of the county for trial. The burden of proof shall be upon the people to prove the fact of addiction by a preponderance of the credible evidence. Evidence may be presented by either party on any matter relevant to the issue of whether or not the defendant is a narcotic addict. Any relevant evidence, not legally privileged, shall be received regardless of its admissibility under the exclusionary rules of evidence; provided, however, that the right of confrontation and cross-examination, as it exists at a criminal trial, shall not be abridged.

3. If the defendant is found, after a hearing or a jury trial of the issue, to be a narcotic addict the court wherein such finding is made shall certify or sentence the defendant in accordance with subdivision four of this section. Such certification or sentence shall be deemed to be a judgment of the court in which the plea or verdict of guilty was entered. If the defendant is found not to be a narcotic addict, the court, if it be the court in which the plea or verdict of guilty was entered, shall sentence the defendant in accordance with the provisions of the penal law without regard to the provisions of this chapter. If the defendant is found not to be a narcotic addict by a court other than the court in which the plea or verdict of guilty was entered, the action shall be returned to the court of conviction for sentencing in accordance with the

tenced, may, under § 208(4)b, be sentenced to a similar commitment, limited to sixty months.

The statute is clear, and has been construed by the highest court of New York to grant no credit for pre-trial detention against the maximum term of the commitment.[4] It is claimed (Amended Complaint, ¶13) that § 208(4) denies plaintiffs equal protection of the law in that, solely because of indigency and resulting inability to make bail prior to certification, they may be deprived of liberty for a total period greater than the maximum certification period. Plaintiffs also claim a denial of due process of law, to members of the class, in that they are penalized for their indigency should they seek to contest the issue of addiction after having been convicted of the predicate misdemeanor. Such injury is said to arise because, should they not prevail, the extra time spent in detention pending adjudication of that post-conviction issue would be, as characterized in the amended complaint (¶14), "dead time".

We do not reach the merits of the controversy. Nor do we grant leave to maintain this cause as a class action. Helidor Martinez, a plaintiff in this action, raised the same issue on direct appeal from the New York Court of Appeals to the Supreme Court of the United States. His appeal was dismissed on October 12, 1971, sub nom. Haynes v. New York, 404 U.S. 804, 92 S.Ct. 159, 30 L.Ed.2d 37 [5] "for want of substantial federal question". Similarly, plaintiff Philip Aquafredda appealed directly from App.Term, Sup.Ct.N.Y., 1st Jud. Dept. to the Supreme Court of the United States (Aquafredda v. New York, 404 U.S. 878, 92 S.Ct. 218, 30 L.Ed.2d 159), and his appeal was also dismissed for want of a substantial federal question.

Plaintiff Willis Crosby's situation is factually indistinguishable from that of Aquafredda and Martinez, except that Aquafredda and Martinez are presently at liberty under the continued supervision of defendants and subject to return to the institutions should they violate the conditions of their release. Crosby

provisions of the penal law without regard to the provisions of this chapter.

4. A person who is found to be a narcotic addict pursuant to this section and who has pleaded guilty to or has been found guilty of a felony, misdemeanor or the offense of prostitution, shall be sentenced as follows:

a. Where sentence is to be imposed for a misdemeanor or for the offense of prostitution, the defendant shall be certified to the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate upon the first to occur of (1) the discharge of such defendant by the commission as rehabilitated, or (2) the expiration of a period of thirty-six months from the date of such period commenced.

b. Where sentence is to be imposed for a felony, the court, in its discretion, may either (1) impose an indeterminate sentence to an institution under the jurisdiction of the state department of correction in accordance with the provisions of the penal law applicable to

sentencing for such felony (except as otherwise provided in subdivision five of this section), or (2) certify such defendant to the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate upon the first to occur of (i) the discharge of such defendant by the commission as rehabilitated, or (ii) the expiration of a period of sixty months from the date such period commenced.

5. Certification to the care and custody of the commission pursuant to subdivision four of this section shall be deemed a judgment of conviction. In no case to which subdivision four of this section is applicable shall the court suspend sentence, the execution thereof or impose a sentence other than that specified in subdivision four of this section.

4. People v. Martinez, 28 N.Y.2d 764, 321 N.Y.S.2d 372, 269 N.E.2d 915 (1971).

5. Mr. Justice Brennan expressed the opinion that probable jurisdiction should be noted, and the case set for oral argument.

remains actually confined to one of defendants' facilities. It is said that Crosby, who, unlike the others, did not appeal his conviction, has not exhausted his state remedies, but we find it unnecessary to reach this issue.

In the jurisdictional statement filed in Haynes v. New York, *supra*, Martinez, plaintiff herein, raised issues indistinguishable from those presently before this Court.[6] Similarly, in Aquafredda v. New York, *supra*, the jurisdictional statement submitted to the Supreme Court raised the same issues.[7]

We find that the constitutional issues tendered us in this action were tendered to the Supreme Court for disposition in *Haynes* and *Aquafredda, supra*. We consider our inquiry foreclosed by those two Supreme Court determinations, little more than a year ago, that the question sought to be raised is not a substantial federal question. The rule in this Circuit has been stated in Heaney v. Allen, 425 F.2d 869, 870 (1970):

"Here the foreclosure comes in the plainest way. This very statute was before the Supreme Court on appeal from a unanimous decision by the highest court of New York sustaining its constitutionality [citation omitted] and the Court dismissed the appeal for want of a substantial federal question, [citation omitted]."

The only point not precisely passed upon by the Supreme Court in *Aquafredda* and in *Haynes, supra*, is the effect of post-trial detention in chilling a

6. Paragraph 3 of his jurisdictional statement reads as follows:

"Appellant Martinez was arrested on a criminal complaint on August 28, 1969. Unable to meet the $1500 bail, appellant was assigned counsel and was convicted after trial of petit larceny. On February 19, 1970, after a jury found him to be an addict, appellant was sentenced to the custody of the Narcotic Addiction Control Commission for a maximum period of 36 months. Mental Hygiene Law § 208(4a). The trial court denied counsel's motion to have appellant sentenced *nunc pro tunc* the date of arrest (August 28, 1969) thereby refusing appellant credit toward the 36 month maximum commitment period for the 175 days he spent in jail between arrest and eventual commitment.

"Due solely to his indigence and his concomitant inability to make bail, Appellant Martinez, by virtue of Mental Hygiene Law § 208(4a), is facing a total period in custody 175 days longer than the period in custody faced by those misdemeanant addicts sentenced under the same statute who had the financial resources to make bail.

"The statute, as currently interpreted and applied by the courts of New York, [footnote omitted] operates to create two classes of misdemeanant addicts for purposes of defining the total maximum period in custody emanating from a single transaction. The misdemeanant addict who had the financial resources to make bail, and who thereby remained free until sentenced to the Commission, can be kept in custody for no longer than the au-

thorized commitment period of 36 months. The indigent misdemeanant addict unable to meet bail, is force to spend time in jail pending sentence to the Commission before the authorized maximum commitment period of 36 months even commences to run.

"Since only those with access to funds can meet bail, remain free pending sentence, and thereby avoid spending time in custody beyond the 36 months authorized by the Mental Hygiene Law, § 208(4a), that statute works an invidious and unconstitutional discrimination against indigents, who cannot post bail and who, for that reason alone, are exposed to a total period in custody in excess of the authorized statutory maximum—a period not faced by a solvent misdemeanant addict eventually sentenced under the same statute. Compare Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)."

7. Paragraph 3 of Aquafredda's jurisdictional statement reads as follows:

"Because he was unable to afford the bail set, Appellant was incarcerated for six months prior to his commitment to the custody of the Narcotic Addiction Control Commission. He received no credit for this time. For the reasons set forth in section 3 of the *Martinez-Haynes* Jurisdictional Statement, the failure to credit Appellant with the time served prior to his commitment violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment."

defendant's resolve to contest the issue of addiction, following his conviction of the predicate misdemeanor or felony. We do not consider this a substantial question. If such a problem arises, the remedy is to demand a prompt or immediate hearing. Only if such relief is withheld from a person subjected to such post-trial detention, would any substantial federal question arise, and such question would relate to his Sixth Amendment right to a speedy trial.

We are told in *Heaney, supra,* that (425 F.2d at 870–871):

"Despite a student view that little effect should be given to Supreme Court decisions with respect to substantiality made on motions not orally argued, 68 Colum.L.Rev. 785 (1968), we continue to hold our considered position that 'unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise.' Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 263 & n. 3 (1967)."

We find no such subsequent doctrinal developments here. The case of Tate v. Short, 401 U.S. 395 (1971) was decided prior to *Aquafredda* and *Haynes,* and was specifically referred to in the jurisdictional statement in *Haynes,* and incorporated by reference in the jurisdictional statement in *Aquafredda.* We cannot assume or conclude that the Supreme Court, in disposing of *Haynes* and *Aquafredda,* overlooked the significance of its own recent decision in *Tate.*

Royster v. McGinnis, 332 F.Supp. 973 (S.D.N.Y.1971), prob juris noted, 405 U.S. 986, 92 S.Ct. 1247, 31 L.Ed.2d 452 (1972), is relied on by plaintiffs as evidence of doctrinal change. There, it appeared that those who had served their term of penal confinement in a state prison, had the opportunity to earn good time credit for the entire period served, but those defendants, indigents and otherwise, who served part of their total penal term in county jail under pre-trial detention, could not earn good time during such period. A statutory court in this Circuit, (Hays, Circuit Judge, dissenting) held this a denial of equal protection. We draw no inference of doctrinal change from the fact that the Supreme Court has noted probable jurisdiction; the significance thereof is as stated in Rule 16 of the Rules of the Supreme Court of the United States. Under 28 U.S.C. § 1253, and subject only to the limitations of Rule 16, a direct appeal to that Court lies of right in *Royster.*

Finding no change in doctrine since *Aquafredda* and *Haynes* were before the Supreme Court, we consider ourselves bound by *Heaney, supra,* and find that the complaint herein does not raise a substantial federal question, and that it ought to be, and is, dismissed.

MULLIGAN, Circuit Judge, and BAUMAN, J., concur.

It is so ordered.