In the Matter of NEW YORK STATE CHIROPRACTIC ASSOCIATION, INC., Appellant, v NEW YORK STATE BOARD OF REGENTS et al., Respondents.

Third Department, November 20, 1986

APPEARANCES OF COUNSEL

*Lillian R. Villanova, P. C.,* for appellant. *Robert D. Stone (Donald O. Meserve* and *James H. Whitney* of counsel), for respondents.

### OPINION OF THE COURT

WEISS, J.

Effective November 4, 1984, the Education Law was amended to give chiropractors, *inter alia,* the right to use "diagnostic services performed by clinical laboratories which services shall be approved by the board as appropriate to the practice of chiropractic" (Education Law § 6551 [3], as amended by L 1984, ch 958, § 1; *see,* Public Health Law §§ 570, 571, as amended by L 1984, ch 958, §§ 2, 3). Subsequently, after deliberations, the State Board for Chiropractors (State Board), an advisory body appointed by respondent New York State Board of Regents (Regents) pursuant to Education Law §§ 6508 and 6553 to assist the Regents and respondent Education Department on matters of professional licensing, practice and conduct, approved a definition of appropriate diagnostic services for the practice of chiropractic. That definition pro-

vided that chiropractors could order those clinical laboratory services which are contained within the required course work of registered doctoral programs in chiropractic in this State. The Regents ultimately promulgated a regulation which amended the text recommended by the State Board to read as follows: "Laboratories. Pursuant to section 6551 (3) of the Education Law, a licensee may use for diagnostic purposes those clinical laboratory services which are contained within the required coursework of all registered doctoral programs in chiropractic in this State and the study of which the licensee has successfully completed in a course of study satisfactory to the department, provided that nothing herein contained shall be construed as expanding the definition of the practice of chiropractic" (8 NYCRR 73.4).

Relying upon the express language of Education Law § 6551 (3), stating that such diagnostic "services shall be approved by the *board*" (emphasis supplied), petitioner, a not-for-profit corporation organized to represent the professional interests of chiropractors, commenced this CPLR article 78 proceeding seeking a judgment declaring 8 NYCRR 73.4 to be void on the ground that the State Board, not the Regents, has final authority under Education Law § 6551 (3) to determine the appropriate definition of diagnostic services for use by chiropractors. Alleging that the regulation was adopted with the advice of the State Board and consonant with the authority granted the Regents under Education Law article 130 to promulgate rules and regulations, and, further, that because all health professionals are obligated under 8 NYCRR 29.1 (b) (9) to order only those professional services within their professional expertise, respondents moved to dismiss the petition. Special Term granted the motion, holding that the State Board is only advisory in nature and that the Regents has final authority to promulgate rules and regulations appropriate to the practice of chiropractic and, in addition, that the subject regulation does not contravene the statute. Petitioner has appealed.

It is beyond cavil that the Regents and the Education Department, through the Regents, are vested with the ultimate authority to supervise and administer the admission into and practice of the professions (Education Law § 6504), and that this authority includes the power to promulgate rules and regulations (Education Law §§ 6506, 6507). It is equally clear that the State Board is to be appointed by the Regents on recommendation of the Commissioner of Education for the

purpose of assisting the Regents and the Education Department on matters of professional licensing and professional conduct (Education Law § 6553). Petitioner's attempt to exalt the role of the State Board to encompass the promulgation of rules and regulations over the authority of the Regents and the Education Department is untenable. It is not evident that the Legislature intended to divest respondents of these powers by its enactment of Education Law § 6551 (3), which statute defines the practice of chiropractic and limits certain actions by chiropractors. Support for this interpretation may be found in Education Law § 6551 (2) (b), in which limitations upon chiropractors' use of X rays is found. Education Law § 6551 (2) (b) provides that the "requirements and limitations with respect to the use of X-ray by chiropractors shall be enforced by the state commissioner of health and he is authorized to promulgate rules and regulations *after conferring with the board to carry out the purposes of this subdivision*" (emphasis supplied). Moreover, we find little difference between the regulatory language originally proposed by the State Board, i.e., "licensees may use those laboratory services for diagnostic purposes *for which they have been educated*", and the regulation, which provides that "a licensee may use for diagnostic purposes those clinical laboratory services *which are contained within the required coursework * * * and the study of which the licensee has successfully completed*" (8 NYCRR 73.4 [emphasis supplied]). It appears that the regulation has indeed incorporated the recommendation of the State Board by restricting the use of clinical laboratory services by chiropractors to those services for which they have completed formal educational training.

Nor do we find any inconsistency between Education Law § 6551 (3) and 8 NYCRR 73.4. As previously stated, Education Law § 6551 defines the practice of chiropractic and contains very limited exceptions to specific prohibited activity by licensees. While the definition in the statute and the regulation are not identical, it cannot be gainsaid that the regulation is consistent with the statute. In essence, the regulation implements the narrowly drawn exception permitting chiropractors to use diagnostic services when qualified by educational training. This is confirmed in the memoranda to the Legislature by the bill's sponsor and by petitioner's legislative representative *(see,* mem of legislative sponsor, July 2, 1984, Governor's Bill Jacket, L 1984, ch 958, § 1).

We find petitioner's argument that 8 NYCRR 73.4 unlaw-

fully discriminates among chiropractors by precluding those with lesser educational training than others from ordering laboratory tests to be unpersuasive. First, 8 NYCRR 29.1 (b) (9), which defines unprofessional conduct by all professions, specifically includes as prohibited conduct, the "practicing or offering to practice beyond the scope permitted by law, or accepting and performing professional responsibilities which the licensee knows or has reason to know that he * * * is not competent to perform". All licensed professionals, including chiropractors, are subject to the constraints of this regulation regardless of any interpretation placed upon 8 NYCRR 73.4. Moreover, courts have rejected attacks upon the imposition of new requirements on the continued practice of chiropractic *(see, Wasmuth v Allen,* 14 NY2d 391, *appeal dismissed* 379 US 11).* We hold that the limitation (in use of laboratory testing) based upon the educational training of chiropractors does not result in impermissible discrimination. Chiropractic, having close concern with the public health, is a field where the police power of the State may be asserted in order to limit its practice to only properly qualified persons *(Wasmuth v Allen, supra; Matter of Anile v Nyquist,* 34 AD2d 1067).

We further find meritless petitioner's contention that the regulation is arbitrary and capricious by discriminating among chiropractors, and between chiropractors and other health professionals, by requiring each chiropractor to be familiar with the purpose and meaning of a laboratory test before ordering such test. The imposition of additional educational requirements upon chiropractors, although not applicable to other health-provider professions, is not unlawful. In *Chiropractic Assn. v Hilleboe* (12 NY2d 109), the Court of Appeals upheld restrictions upon the use of X rays by chiropractors to the exclusion of those who practice medicine, dentistry, podiatry or osteopathy.* Moreover, all licensed health providers are subject to the limitations imposed by 8 NYCRR 29.1 (b) (9).

█ Finally, we are unable to rule upon petitioner's argument concerning the interpretation placed upon 8 NYCRR 73.4 by the Department of Health because that agency is not a party to this proceeding. Respondents insist that the interpretation given the regulation by the Department of Health differs from their own in that respondents have construed the

---

* Education Law § 6551 (2) was amended in 1983 to clarify chiropractors' limited rights to use X rays (L 1983, ch 450, § 1).

regulation as imposing a general limitation requiring each chiropractor to limit his use of clinical tests to those in which he has been properly trained, whereas the Department of Health's interpretation requires the laboratory director to make a personal assessment of each chiropractor's educational background and then determine whether the test ordered is authorized by the regulation. While we recognize that respondents have expressly rejected the position of the Department of Health, petitioner's failure to request a judgment clarifying the meaning of 8 NYCRR 73.4 or to have joined the Department of Health as a party precludes judicial review of this issue.

CASEY, J. P., MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment affirmed, without costs.