[602 NYS2d 945]

In the Matter of NEW YORK STATE LICENSED ACUPUNCTURIST ASSOCIATION, INC., Appellant, et al., Petitioner, v REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, October 21, 1993

## APPEARANCES OF COUNSEL

*Beller & Keller,* New York City *(Robert S. Herbst* of counsel), for appellant.

*Robert Abrams, Attorney-General,* Albany *(Leslie B. Neustadt* and *Nancy A. Spiegel* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, J.

In 1990, the Legislature enacted Education Law article 160 (Education Law §§ 8210-8216) providing for the regulation and licensure of acupuncture practice in New York (L 1990, ch 772). Pursuant thereto, it established a new framework for licensing acupuncturists which required, among other things, successful completion of an examination consisting of both written and practical parts (Education Law § 8214 [4]). In conjunction with the legislation, the Legislature also created a State Board for Acupuncture (hereinafter the Board) for the stated purpose of "assisting the board of regents and the [education] department on matters of professional licensing and professional conduct in accordance with [Education Law § 6508]" (Education Law § 8213 [1]).

One of the first matters that came before the 11-member Board was a request by respondent Commissioner of Education to issue a recommendation on the wisdom of adopting the licensing examination prepared by the National Commission for the Certification of Acupuncturists (hereinafter the NCCA exam). Following review, the Board voted on two occasions (April 12, 1991 and June 20, 1991) to reject the NCCA exam. Thereafter, believing that emergency action was necessary in order to permit notice to be given to possible applicants in sufficient time so that they would have an opportunity to take the licensure exam before the May 1, 1992 deadline set by the Legislature (Education Law § 8214 [4]), the Commissioner issued an emergency request to respondent Regents of the University of the State of New York recommending that it approve a regulation (8 NYCRR 79-2.2) accepting the NCCA exam or a comparable exam. The Regents approved the emergency measure and later confirmed its action in January 1992 after receiving public comment.

Petitioners then commenced this CPLR article 78 proceeding challenging the validity of 8 NYCRR 79-2.2 and the rationality underlying the Regents' decision to adopt the NCCA exam. Seizing upon the language contained in Education Law § 8214 (4) which provides, among other things, that an applicant must "pass an examination satisfactory to the board", petitioners premised their invalidity argument upon the belief that this language accorded the Board exclusive authority to select the licensure exam with the result that the Regents was powerless to accept an exam over the Board's express rejection. Supreme Court rejected this argument and also concluded that a rational basis existed for adoption of the NCCA exam. Petitioners appealed. On April 14, 1993, during pendency of the appeal, the Board ultimately approved use of the NCCA exam.

Initially, we reject respondents' contention that the Board's subsequent approval of the NCCA exam renders this appeal moot. In this regard we are inclined to agree with petitioners that the Board's after-the-fact approval cannot nunc pro tunc validate the Regents' prior act if indeed it was ultra vires when undertaken. On the merits, however, we disagree with petitioners' arguments and find the challenged regulation to be a valid exercise of the Regents' authority and neither arbitrary nor capricious. While, standing alone, the language in Education Law § 8214 (4) requiring that applicants "pass an examination satisfactory to the board" would seem to suggest that the Board, not the Regents, has exclusive and final authority over the selection of a licensing exam (see, Education Law § 6508 [2]), a review of the over-all object and purpose of the statutory scheme underlying regulation of the professions persuades us to the view that petitioners' interpretation, inasmuch as it would result in exalting the role of the Board over the authority of the Regents, is not consistent with the legislative intent.

The entire scheme of Education Law title VIII, which scheme is carried over by express reference into the acupuncture provisions, contemplates ultimate authority for the supervision and administration of matters relative to admission into and practice of the professions to rest with the Regents and the State Education Department (see, Education Law §§ 6504-6508; L 1990, ch 772, § 1; see generally, Matter of New York State Chiropractic Assn. v New York State Bd. of Regents, 120 AD2d 177, lv denied 70 NY2d 616). This is perhaps best illustrated by the fact that these entities alone have the

authority to promulgate appropriate rules and regulations (Education Law § 6506 [1]; § 6507 [2] [a]; § 8213 [3]). The Board, on the other hand, has no such authority. Its stated purpose is simply to render assistance (Education Law §§ 6504, 6508 [1]; § 8213 [1]). Consistent with this function, the Board members are appointed by the Regents and the Board has no independent rule-making authority. While, concededly, the Board has certain statutorily defined obligations, including, among other things, the selection, preparation and grading of exams and the conducting of disciplinary matters (Education Law § 6508 [2], [3]), when viewed against the foregoing backdrop, it becomes readily apparent that imposition of these obligations was not intended to imbue the Board with superior authority to that of the Regents in these areas but, at best, to delineate certain of its functions which it is to carry out under the Regents' supervision. Put another way, the Regents has and maintains exclusive authority but is to be assisted in certain of its tasks by the Board (cf., Matter of New York State Chiropractic Assn. v New York State Bd. of Regents, supra, at 178-180). That being the case, when the Board failed to approve any examination and with the time for adopting one within the statutorily imposed timetable running out, the Regents was free to take whatever actions it felt were necessary.

As a final matter, we are also unpersuaded that the Regents' determination to accept the NCCA exam lacks a rational basis. Apart from the fact that the Board itself has since approved the exam, there is absolutely no evidence in the record that the NCCA examination is insufficient. It is used in 20 of the 22 States that license acupuncturists and there is no indication that those States which utilize the exam have experienced a high incidence of professional misconduct or incompetence.

MIKOLL, J. P., YESAWICH JR., MERCURE and CREW III, JJ., concur.

Ordered that the judgment is affirmed, without costs.